Good afternoon, your honors. May it please the court, my name is Brian Wolfe, and I represent the petitioner Teresa Reyes Villanueva. Please allow me to reserve two minutes for rebuttal time. Your honors, what this case is all about is over the course of their nearly 20-year relationship, the petitioner was the victim of constant and horrific abuse perpetrated by her former partner and high-ranking MS-13 gang member, Hector Mejia. Despite Hector's numerous arrests and imprisonments, the abuse, persecution, and torture against the petitioner continued unabated, and in fact, escalated and worsened over time. Here, the agency found that she was unable to, or that she did not demonstrate a lack of state protection. She did not demonstrate that she was persecuted on account of a protected ground and denied her relief. Those findings were contrary to the facts, contrary to the law, and contrary to this court's binding precedent. Accordingly, as far as the relief that we're seeking today, we would respectfully request that this court remand to the BIA with instructions to grant asylum, or alternatively, we would request that this court find that El Salvador is unable to protect the petitioner, and that she was persecuted on account of her membership in the particular social group of women in El Salvador, and remand to the BIA with instructions to issue a new decision in accordance with those findings. Counsel, can I ask you a question? Yes, Your Honor. Question is this. Assuming that we were persuaded by your argument that there is not, that there was an error of law or inadequate evidence supporting what the board did on whether she was, whether the government was unwilling or unable to control Hector and the gang, would we be able to remand, as you said, with directions on the issues of nexus and cognizable social group, or if those issues weren't reached by the BIA, would we be required just to grant and remand, or further proceedings consistent with our decision? Well, Your Honor, it's our position that although the BIA didn't specifically address the particular social group and nexus issues, those issues were raised before the BIA on appeal. This court has consistently held that the BIA is not free to ignore the arguments made by a respondent or a petitioner before them. The fact that the BIA ignored those arguments and erred in doing so was also raised before this court in our briefs. Accordingly, it's our position that those issues were preserved because we raised them on appeal before the board and before this court, such that this court can address those issues. But the board thought it didn't need to decide them. If we disagree with the basis the board did decide the case on, wouldn't we remand for consideration of the things it didn't reach? Well, yes, Your Honor. The board did not decide those issues, but again, we've argued that those issues were preserved for this court to address. The board is not free to just simply ignore issues that were raised in the parties' briefs before it. I would respond to that. I would respectfully argue that if this court were to allow the board to ignore those issues, even though they were raised before them and raised before this court, it would essentially be allowing them to continue that in the future. And again, this court has repeatedly held that the board is not free to simply ignore arguments raised before it. But only if they matter. Sorry, go ahead, Judge Gould. We definitely would not say they could ignore those arguments. But still, should we say they should decide those arguments? Well, Your Honor, the relief that we're requesting is that because, as I stated, it's our position that those issues were preserved before this court, that this court is able to address those arguments. Alternatively, if this court were to find that it's not able to address those arguments, then we would respectfully request that this court remand with instructions for the BIA to do so. Okay, thank you. The three main points that I'm going to be arguing today are, firstly, that the BIA erred as a matter of law in their state protection analysis by conflating the El Salvadoran government's willingness and ability to protect the petitioner. And that substantial evidence does not support their conclusion that the El Salvadoran government is able to provide her with effective protection. I will also be arguing that the BIA and the agency erred in their state protection analysis by failing to properly consider the facts of the case, the country conditions, and expert evidence, or excuse me, and expert witness evidence of record. And lastly, I will be arguing that the BIA and the agency erred and acted in contravention of this court's binding precedent by failing to recognize women in El Salvador as a cognizable particular social group and by failing to find that the petitioner was persecuted on account of her membership in that group. With regards to my first argument, the BIA erred as a matter of law by missing the distinction in their state protection analysis between the El Salvadoran government's willingness and ability to protect the petitioner. The statutory standard under INA 101-A42A states that an applicant for asylum or refugee status must in part demonstrate that their country is unable, or excuse me, that they are unable or unwilling to avail themselves of the protection of that country. I would ask this court to note that that standard is written in the disjunctive, such that a showing of either unwillingness or inability is enough to establish a lack of state protection. The purpose of international refugee and asylee law is to provide effective protection to individuals whose countries are unable to provide them with protection from persecution on account of a protected ground. Federal courts and this court have embraced that ideal and consistently held that a state must be able to provide its citizens with effective protection. Are you arguing that this error that you think the BIA made depends on its application of matter of AB, or do you think it existed aside from that reliance on AB? I think it exists apart from its reliance on AB. I think that its reliance on AB was in error, but when applying the plain language of the statutory standard of unwilling or unwillingness, it was clearly erred by finding that the El Salvadoran government was able to protect the petitioner. Again, this court, for example, in Madrigal v. Holder, a 2013 case which involved a Mexican soldier who participated in anti-drug raids and was kidnapped by the Los Zetas cartel, this court held that the BIA erred in its state protection analysis in that case by only focusing on the Mexican government's efforts to combat the Los Zetas cartel rather than also focusing on the efficacy of those efforts. In other words, this court held that the BIA erred by focusing only on the Mexican government's willingness rather than their ability to protect the petitioner. And do you think we need to decide whether to view the standard as unwilling or unable as opposed to condoned or complete helplessness from AB? Well, Your Honors, with regards to matter of AB, it's also our position that the BIA erred by and that the agency erred by applying the heightened state protection standard in matter of AB, which is incompatible with the statutory standard. Again, as I stated, the standard requires a showing of unwillingness or inability by a country to protect an individual, whereas the heightened AB standard, which is a much higher standard, requires an applicant to show that their country condoned or was completely helpless to protect them. Those two standards are incompatible and irreconcilable. Accordingly, I would request that this court not apply the AB standard or alternatively, in line with other circuit courts that have addressed the issue, find that the matter of AB standard is arbitrary and capricious. In the matter of Grace v. Whitaker, a D.C. District Court judge found that the heightened standard in AB was arbitrary and capricious and issued a permanent injunction forbidding a USCIS from applying that heightened standard. In that case, the government appealed and it went to the D.C. Circuit Court, who recently issued a decision in Grace v. Barr agreeing with the District Court's findings that the heightened standard in AB was arbitrary and capricious and affirming the permanent injunction. On appeal in that case, the government argued that the two standards, the statutory standard and that the heightened standard in AB are interchangeable. However, the D.C. Circuit Court strongly disagreed with those arguments and held that based on the plain language of the statute, that those two standards are hardly interchangeable because a government that condones or is completely helpless to a government that is simply unable or unwilling to protect an individual from persecution. If complete helplessness were the standard here, do you think you would win anyway? I do, Your Honor. I would like to give the court just a brief recitation of the facts of this case, which clearly show that the El Salvadoran government was unable to provide effective protection to my client, the petitioner. Over the course of their nearly 20-year relationship, as I stated, Hector constantly and viciously abused the petitioner. Early in the relationship, Hector locked the petitioner and her daughter, or he imprisoned them against their will in a dairy, which caused the petitioner to become ill. Hector was then arrested and imprisoned for that offense and subsequently released. He then brutally attacked the petitioner and a friend of hers with a broken bottle, slashing the petitioner's friend in the arm, permanently disabling her and stabbing the petitioner in the back with a broken bottle. On another occasion over the course of their relationship, he attacked her with a machete. He broke her arm with a brick. After the bottle incident, he was arrested and imprisoned and subsequently released again. After he was released, in that circumstance, he again attacked the petitioner with a gun, pistol-whipped her, raped her, proceeded to viciously attack her father, attempted to rape her daughter, and when the petitioner intervened, Hector stabbed her in the back for a second time with a knife. He was subsequently arrested and imprisoned and sentenced to 15 years in prison. He only served seven of those years, but while he was in prison, he continued to order his MS-13 gang member subordinates to persecute the petitioner. They continued to threaten her with death and she only nearly escaped one attack. She then planned to flee El Salvador with a friend of hers. Her friend was then mutilated her body. The petitioner then fled and arrived in the U.S. in 2004. Shortly after her arrival, while he was still in prison, Hector obtained the petitioner's phone number in the U.S. and threatened her with death over the phone. After he was released from prison while she was in the U.S., Hector continued to inquire about the petitioner's whereabouts with her contacts in El Salvador. This clearly shows that despite his arrest and imprisonment, the El Salvadoran government was clearly unable to provide her with effective protection under either the statutory standard or the AB standard. If they were able to provide her with protection, with effective protection, the abuse, persecution, and torture against her would have stopped or at least been mitigated, but that was clearly not the case. Lastly, we would argue that the BIA and the agency aired enacted in contravention of this court's binding precedent by failing to find that the petitioner's proposed social group of women in El Salvador was a cognizable particular social group and that she was persecuted on account of her membership in that group. This court has consistently held that the gender of a certain nationality can establish a particular social group. For example, in Perdomo v. Holder, this court held that all Guatemalan women was a particular social group. In Mohammed v. Gonzalez, this court held that the same social group proposed in this case with women in El Salvador was a cognizable group and the BIA aired by finding to the contrary. Lastly, it's our... Counsel, let me ask you this question. Yes, Your Honor. Did the BIA affirmatively hold to the contrary on cognizable social groups? Did they just not reach that issue? Your Honor, they did not address that issue in their decision, but again, it's our position that they committed legal error by doing so and that we preserved this court's ability to address that issue by raising it on appeal before the BIA and before this court. Thank you, Counsel. Your time is up. In fact, it's over by close to two minutes, but I'm going to give you an extra two minutes for rebuttal if you want to plan your time. Yes, Your Honor. I'll proceed to Ms. Morgan. Ms. Morgan will give you an extra two minutes, too, just to be equal on both sides if you need it. Thank you, Your Honor, and good afternoon. May it please the court, I'm Carmel Morgan on behalf of the respondent, the U.S. Attorney General. The court should deny the petition for review because substantial evidence supports the agency's determination that the petitioner did not meet her burden of showing that El Salvador is unable or unwilling to control either Hector or other MS-13 gang members. The agency relied on the fact that the police always promptly responded to the petitioner's complaints of abuse. Hector was arrested and prosecuted, convicted, and received sentences that were not de minimis, but in fact were quite significant. His last imprisonment was a sentence of 15 years for which petitioner heard he served seven. In addition, the El Salvadoran police were able to investigate, arrest, prosecute, and convict the gang members who apparently were the same folks who had been arrested. So based on those decisive actions by the Salvadoran government, the conclusion was that the petitioner didn't meet her burden to show that the government was unwilling or unable to protect her. Ms. Morgan, I apologize for interrupting your flow of argument, but let me just cut to the point and also present a sort of minimalist approach to this case that I might, as one judge, want to take. Your agency, the BIA, said that she didn't show that the government was unwilling or unable to protect her from Hector, and they certainly did show that the weren't unwilling to protect her because they kept putting Hector back in jail or taking other actions against him. So they showed some willingness, but I don't see evidence that they showed they were able to protect her. And what bothered me equally was that I thought she had argued specifically that gang leaders in Mara 18, when they were incarcerated, could still take adverse actions against people by calling out of prison with their cell phones and siccing other gang members on a person. And that, in fact, that had happened to her and she'd been targeted for a hit while he was in prison. If the government did not, if the BIA did not address that issue at all, that is address not willingness, but ability to protect her and didn't, as far as I know, didn't address whether gang guys like Hector in Mara 18 could order a hit from their prison cells, then why shouldn't we remand so the BIA, to require the BIA to address that issue? From the government's perspective, the BIA decision and the IJ's is adequate because the agency determined that she didn't meet her burden to show either unwillingness or ability. And again, it pointed to a number of arrests and convictions involving both Hector and the gang members. But don't those arrests just show willingness to protect her? But how do any of those arrests show ability to protect her if, in fact, the guy, like in one of those old 1920s Al Capone movies, you know, could be ordering murders from a prison cell? Respectfully, Your Honor, when Hector was imprisoned, the petitioner was not harmed physically by him during that period of time. So she was 100 percent effectively protected from him while he was in prison, which definitely shows the government's ability to control and protect her. With regard to the allegation... How could that... That can't be right. I mean, if his friends attacked her on his behalf, doesn't that count as not protecting her from him in any relevant sense? There's no evidence that she reported to the police that she was receiving threats from the gang while he was in prison. It might make a difference if she had reported to them, I'm getting phone calls, the gang members are after me, I think Hector is directing them to harm me. But there's no evidence in the record that that's the case. If the Salvadoran government had been aware and then failed to act, I think that's a different question. But there's no evidence here that they were aware that perhaps illicit cell phones were being used. She maybe didn't call that to their attention. Certainly they acted every time she came to them with complaints. Didn't the police get involved when Evelyn got murdered? Yes, Your Honor, they did. So the police had knowledge that Hector was in prison and was enforcing violence outside of the prison? And they arrested and convicted those members who murdered Evelyn. Yes, Your Honor. When they were made aware, they took action. What did arresting them do to Hector? He's in prison, he's not, you know, if he's in prison, what other thugs impact him or show ability to control him? I'm not sure what they knew other than the gang members came after Evelyn and then the government came after the gang members. I don't know specifically that they knew that threats were made against Petitioner. That evidence just isn't in the record to show that connection. Ms. Morgan, the judge, immigration judge, found Petitioner's expert credible. Is that true? Yes, that's true. And did the expert testify about the inability of the Salvador government to control activity from within the prison? He did offer testimony on that point, yes. If you have a credible witness, how does the BIA just go the opposite way if they're not finding problems with that testimony? If they're accepting that testimony as good testimony as some basis, how do they then conclude the opposite? Well, he offered general testimony about his knowledge of country conditions overall. He also said that in some instances, women are able to find effective protection through use of the Salvadoran authorities. And under some circumstances, El Salvador is able to control gang members. And we have here, not just general country conditions, but we have Petitioner's own very specific testimony about what happened, where the police did, in fact, take action against Hector and imprison him, and did, in fact, take action against fellow gang members who murdered someone and took action against them. So it's not that the expert was not believed about his evidence generally about El Salvador. It was that there's sort of conflicting specific evidence about what happened to Petitioner in this case. And Petitioner was also found credible. Do you think the board applied the AB standard of complete helplessness? I do not think so, because although they cited AB in the decision, they used the unwilling and unable language. They didn't specifically use condoned or complete helplessness. Neither did the IJ. I don't think it makes a difference, and I don't think it's an issue that the court needs to reach. The government does not dispute that unable and unwilling is the proper test. Whether it means the same thing as complete helplessness and condoned is a separate issue that the board didn't reach here, and I think the court need not reach here either. So if we think that complete helplessness is not the same as unable, why shouldn't we be worried about whether the board really was applying that standard given that it cited AB? I just think from the evidence in the case, it's very plain that the government wasn't completely helpless because it consistently took action. So you're just saying you would win under the AB standard? Correct. But we might, I'm not sure that tells us that they didn't apply that standard. I don't understand how that answer tells us to have... It wouldn't make any difference because the two standards are synonymous with one another. So that's still the government's position, so the D.C. Circuit held they're not synonymous, but the government's position is still that they are synonymous. Correct, because the D.C. Circuit was addressing a very specific issue confined to credible fear proceedings in which it was looking at a policy memo. There's other circuit courts that have come to agree with the government that the standards are in fact the same. I think there's a decision of this court unpublished with a footnote that also says AB doesn't alter the standard. So I don't think that's something that the court need reach here, but if it did, the government's position is that the standards are not functionally different. But your primary position is that you think the BIA ruled on the unwilling or unable standard and that we can decide the case with reference to that without reaching the question whether AB's standard applies or is different than our precedent. Yes, that's exactly the government's position, Your Honor. Okay, thank you, Counsel. You're welcome. As to the particular social group question and other issues that the board didn't reach, the board didn't reach those issues because it felt like unable and unwilling was dispositive here. Regardless, the court can't in the first instance reach those issues as petitioners seemed to hint might be appropriate. The court would have to remand to the agency to address them first under Ventura. And so if the court disagrees on unable-unwilling or on the other matters that the board did address, then remand would be appropriate. The court definitely can't order outright relief on asylum as asylum is a discretionary decision and the agency would at least have to consider whether to exercise discretion or not. So I have a practical question for you. I tend to agree with your argument that under Ventura we shouldn't reach or make a ruling based on issues that weren't addressed by the board. But if we end up disagreeing with your argument on unable-unwilling standard, then we're going to remand to the board to address issues that it didn't previously reach. Would it be appropriate to ask the board to send the case back to NIJ to get additional findings on some of the issues that might illuminate the application of the other issues of the standards on the other issues? Or is the board supposed to decide those other issues based on just whatever was in the record to it? Or is there some other principle that controls on that? I think the board would get the first crack at deciding those issues. And if the board felt that there needed to be further fact-finding, then the board would need to remand to the IJ. And I can't say whether or not that would be appropriate because the board hasn't addressed those issues. But I don't think it would be correct for this court to tell the board what to do before the board reaches those issues. We couldn't address that issue and preempt the board on that? I suppose you could. It's just my opinion that that wouldn't be the appropriate role for the court. Right. Because the board hasn't looked at the issues yet. Correct. Yes, Your Honor. Well, I understand, I think. As well as I'm going to understand. But I hope that HECR doesn't disturb our valiant advocates here. But do you have anything else, Ms. Morgan? I would just say that I'm heartbroken about the amount of violence that the petitioner in this case suffered both in her home country and in the United States. Domestic violence is a terrible problem worldwide. It's quite intractable. And I'm not sure what effective protection looks like with someone like HECR unless that's lifetime imprisonment or whether it's some type of witness protection program, which I guess wouldn't be a witness because I'm not sure a petitioner was a witness, but whether it would be some sort of extra protection and whether we could really require that of other governments. It's an interesting question. I know the United States isn't particularly relevant here, but even in the U.S. this would be a difficult problem. The country conditions report shows that there are restraining orders available and the petitioner said she was working with an attorney. So hopefully she would be able to again go to the police who had been helpful to her and ask for further assistance. There's just no evidence in the record, quite the contrary, that the police seemed willing and able to assist her every time she approached them. And if she had these concerns, hopefully she would again go to them. She at least felt that the police would help her because she continued to go to them. So if there are no further questions, the government asks that you deny the petition for review. Thank you, Ms. Morgan. Nicely argued. And Judge Booth, Judge Friedland, any questions? Okay, hearing nothing further for the government, we will ask Mr. Wolf to please give us his rebuttal argument. And I've extended the time for two minutes beyond what we started previously. Thank you, Your Honors. I would again argue that the respondents and the agency's position that the El Salvadoran government was willing and able to protect the petitioner all fail for the same reasons and present the agency's and the government's incomplete cherry-picking review of the facts. The undisputed facts clearly show that despite his multiple imprisonments, the abuse against her continued uninterrupted and escalated over time. The BIA ignored the IJ, addressed those facts in their decisions. Accordingly, it's our position that the El Salvadoran government is not able to provide the petitioner with effective protection. With regards to addressing the particular social group issue on appeal, again, I would ask this court to note that the decision of SAGEDEC, which was a 2005 decision, where this court explicitly held that the BIA is not free to ignore a respondent's arguments on appeal. On appeal, we argued the particular social group issue and we argued the nexus issue. If this court were to allow the BIA's decision to stand without addressing those issues, it's my feeling that this court would be giving their passive assent for them to do that in the future. David, Mr. Wolf, how do you respond to Ms. Morgan's argument that she urged us that the Supreme Court's Ventura decision, in fact, says that we could not rule on those issues because the board did not address them? Your Honor, I believe, I could brief that issue, but I believe the Ventura decision states that this court is not able to grant relief unilaterally without sending a decision to the board for a decision in the first instance. I do believe that this court would be able to address the state protection and the particular social group issues in remand to the board to make additional findings in line, or excuse me, to issue a new decision in line with those findings and not violate the Supreme Court's precedent in INS v. Ventura. Lastly, I would just draw the court's opinion, or excuse me, draw the court's attention to the credible and undisputed expert witness statements which explicitly state that the petitioner would be subject to further persecution, torture, if not murder, if deported to El Salvador, and also which explicitly state that the El Salvadoran government is only able to provide her with minimal and ineffective protection. That's all, Your Honors. Thank you. Thank you, Mr. Wolf. Well, not only counsel from Oregon, but also counsel from Seattle and from Washington, D.C. have done a great service for our court. We appreciate your excellent arguments. It's a tough case with intractable problems, and we appreciate your help in addressing them. The court shall submit the Reyes-Valendoeva case. Mr. Wolf, are you representing your client, Pro Bono?  Thank you for your service. Thank you, Judge. You're very welcome. Thank you. I think that's the last case on our calendar today. Let me just second Judge Boo's comment. We thank Mr. Wolf for donating his time selflessly in this manner. I appreciate it. Having worked in a law firm for decades, I know it's not always easy to do that. So we give thanks to you and to your colleagues at Ms. Morgan. We know it's also a burden for the government with all the things that it has to deal with to have you address this case in such helpful detail. So both of you have assisted us. And without further ado, I think this case shall now be submitted, and the parties will hear from us in due course.
judges: Gould, Friedland, Bough